|  |  |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | FOR THE EASTERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| LEA DENEUS-COLEY,<br><br>        Plaintiff,<br><br>    v.<br><br>FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER,<br><br>        Defendant. | Case No.  1:25-cv-00306-JLT-HBK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; AND STAYING ACTION**<br><br>(Doc. Nos. 7, 9) |

Pending before the Court is Defendant Fresno Community Hospital and Medical Center's Motion to Compel Arbitration, Dismiss Class Claims, Stay Representative Claims, and Stay Proceedings filed March 20, 2025. (Doc. No. 7). Also pending is Plaintiff's Motion for Leave to File a Second Amended Complaint filed on April 3, 2025. (Doc. No. 9). The Parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1) for purposes of disposition of the pending motions. (Doc. Nos. 11, 14). On June 5, 2025, the Court held a hearing on the Parties' respective Motions. (*See* Doc. No. 23). For the reasons explained below, the Court grants Defendant's motion to compel, denies Plaintiff's motion for leave to amend, and stays the representative PAGA claims.

////

////

I.      **BACKGROUND**

      **A.  Procedural History and Summary of Complaint**

On November 15, 2024, Plaintiff filed her Original Class Action Complaint against Defendant Fresno Community Hospital and Medical Center ("FCHMC") in the Fresno County Superior Court, alleging violations of the California Labor Code and unlawful business practices arising from her employment with Defendant. (Doc. No. 1-2 at 5-31).[1] Defendant filed an answer to the complaint on January 27, 2025. (*Id.* at 68-75). Plaintiff then filed her First Amended PAGA and Class Action Complaint ("FAC"), which added claims to recover civil penalties pursuant to the Private Attorneys General Act ("PAGA") for Defendant's alleged unlawful practices. (*Id.* at 78-111). Defendant filed an answer to the FAC on March 7, 2025. (*Id.* at 115-25).

The following facts are discerned from the FAC. Defendant employed Plaintiff as a registered nurse from approximately December 2023 until March 2024, during which time it misclassified her as an independent contractor to avoid paying her overtime wages. (Doc. No. 1-2 at 81). Using a "straight time for overtime" pay scheme, Defendant paid Plaintiff and other employees "the same hourly rate for all 'on the clock' hours worked up to 12 in a day." (*Id.* at 79). Additionally, Defendant failed to authorize, permit, and/or make available compliant meal and rest periods to employees, instead requiring them "to remain on duty and perform work throughout their shifts" without paying them required premium pay for missing the meal and rest periods. (*Id.* at 79-80). These practices also resulted in employees being deprived of wage statements that accurately reflect all their hours worked and all wages actually earned, and not being paid all wages due and owing upon termination of employment. (*Id.* at 80). While employed with Defendant, Plaintiff's shifts "were scheduled through an online 'app' [Defendant] utilized to secure employees, called CareRev." (*Id.* at 85).

The FAC contains seven counts brought on behalf of Plaintiff and other employees: (1) failure to pay overtime pursuant to Labor Code § 510; (2) failure to authorize, permit, and/or

---

[1] All citations to the pleadings and record are to the page number as it appears on the Case Management and Electronic Case Filing ("CM/ECF") system.

make available rest periods pursuant to Labor Code §§ 226.7 and 512; (3) failure to provide accurate wage statements pursuant to Labor Code § 226; (4) waiting time penalties pursuant to Labor Code §§ 201-203; (5) violation of California Unfair Competition Law pursuant to Business and Professional Code §§ 17200, et seq.; (6) PAGA civil penalties pursuant to Labor Code § 2699(a); and (7) PAGA civil penalties pursuant to Labor Code § 2699(f). (*Id.* at 95-111).

After learning on February 25, 2025, that "Plaintiff is a citizen of Florida," (*see* Doc. No. 1 at 4; Doc. No. 1-2 at 3), Defendant removed the case from Fresno County Superior Court to this federal court on March 12, 2025, alleging original jurisdiction under 28 U.S.C. § 1332(d). (Doc. No. 1).

### B.  Current Motions

Defendant's Motion seeks to compel Plaintiff "to individually arbitrate her claims (including the individual portion of her PAGA claim)" against Defendant, dismiss Plaintiff's class claims, and stay all proceedings—including the non-individual portion of the PAGA claim—pending the completion of arbitration. (Doc. 7 at 1). Defendant contends that under an arbitration agreement between Plaintiff and CareRev, Plaintiff agreed "to individually arbitrate all disputes arising out of [her] use of the CareRev platform and her performance of services for healthcare facilities like [Defendant]" and this agreement covers all of Plaintiff's individual claims here. (Doc. 7-1 at 6).

On April 3, 2025, Plaintiff filed (1) her motion for leave to file a Second Amended Complaint ("SAC") (Doc. No. 9) and (2) her opposition to Defendant's motion (Doc. No. 10). Plaintiff asserts the SAC amends the FAC by "withdrawing all claims in the lawsuit without prejudice, except for the [PAGA] claims, and clarifies that Plaintiff intends to pursue the PAGA claims in her Representative Capacity only" and the SAC "also makes clear that, within the count seeking civil penalties pursuant to California Labor Code § 2699(a), [Plaintiff] is specifically seeking to recover the civil penalties provided for under California Labor Code § 226.8 for her allegations that CMC willfully misclassified the Aggrieved Employees as independent contractors." (Doc. No. 9 at 2). Plaintiff argues she should be granted leave to amend under Federal Rule of Civil Procedure 15(a)'s liberal standard and the factors set forth in *Foman v.*

1  *Davis*, 371 U.S. 178 (1962). (Doc. No. 9-1 at 7). Specifically, Plaintiff contends she did not
2  unduly delay in bringing the motion for leave as "[t]here is currently no deadline to amend
3  pleadings;" the motion is not brought in bad faith because amendment "will make the case less
4  complicated and more streamlined" and will "save the Court and the parties time and resources
5  from having to further brief or resolve the motion to compel arbitration;" there is no prejudice to
6  Defendant because Defendant would benefit from the removal of the claims and the speculative
7  risk that Defendant would have to "litigate on two fronts" if Plaintiff refiled her substantive Labor
8  Code claims in a separate proceeding "is not the type of prejudice that courts find to warrant
9  denying leave to amend;" the amendment would not be futile; and Plaintiff's only previous
10 amendment was not to cure deficiencies. (*Id.* at 8-14).

11        In opposition to Defendant's motion, Plaintiff indicates Defendant "is asking the Court to
12 compel claims to arbitration that [she] is currently seeking to withdraw from the lawsuit
13 altogether, and [Defendant] is **not** asking the Court to compel [her] representative-only claims to
14 arbitration." (Doc. 10 at 5). Thus, Plaintiff argues that "[i]n light of [her] requested amendment
15 and pursuit of non-individual claims, the Court should deny [Defendant's] motion to compel
16 arbitration as moot." (*Id.*). Plaintiff argues that "under PAGA, California is the real party in
17 interest" and "the State of California is not a party to CareRev's purported arbitration agreement"
18 such that once the Court allows her to drop her non-PAGA claims, the only remaining claim is
19 not arbitrable. (*Id.* at 7-8). Anticipating that Defendant would rely on *Leeper v. Shipt, Inc.*, 107
20 Cal. App. 5th 1001 (2024) to argue she could not pursue only her non-individual PAGA claims
21 such that amendment would be futile and the motion to compel was not moot, Plaintiff argues
22 "PAGA plaintiffs may bring PAGA claims that disclaim individual relief and seek only
23 representative relief for the State and other aggrieved employees." (*Id.* at 10). In addition to
24 *Leeper*, which Plaintiff contends "does not stand for the proposition for which [Defendant] cites
25 it," Plaintiff relies on *Rodriguez v. Packers Sanitation Services Ltd., LLC*, 109 Cal. App. 5th 69
26 (2025) and *Balderas v. Fresh Start Harvesting, Inc.*, 101 Cal. App. 5th 533 (2024). (*Id.* at 10-12).
27        Defendant replies that Plaintiff impliedly conceded that she signed the arbitration
28 agreement; the claims in the FAC are within the scope of the agreement; Defendant may enforce

the agreement; the agreement is valid and enforceable; and the agreement requires arbitration of her individual claims, dismissal of her class claims, and arbitration of her individual PAGA claims. (Doc. No. 12 at 5). Thus, Defendant's position is that in light of Plaintiff's "failure to identify any basis on which the individual claims and individual PAGA claims should **not** be compelled to arbitration and the class claims dismissed pursuant to the agreement, the Court should grant the Hospital's pending motion to prevent the Parties from having to re-litigate this issue in an alternate forum." (*Id.* at 5-6). Defendant asserts allowing Plaintiff to dismiss her claims now would circumvent the Federal Arbitration Act ("FAA"), which requires "any arbitrable portions of a case be arbitrated **before** any non-arbitrable portions of the same case." (*Id.*). Additionally, Defendant argues "declining to rule on [Defendant's] motion to compel arbitration risks the Court's implied endorsement of forum shopping." (*Id.* at 8). Finally, Defendant argues Plaintiff's individual PAGA claim must also be compelled to arbitration and, even if the Court were to allow amendment, Plaintiff cannot bring a non-individual PAGA claim without establishing, at a minimum, that she is an "aggrieved employee" and that issue itself is subject to arbitration. (*Id.* at 9-13).

Defendant raises many of the same arguments in its separate opposition to Plaintiff's motion for leave to amend. (*See* Doc. No. 15). Defendant first argues the Court should deny leave and instead rule on Defendant's first-filed motion to compel to prevent Plaintiff from forum shopping. (*Id.* at 6). Next, Defendant argues the amendment would be futile because Plaintiff cannot bring a non-individual PAGA claim based on the statutory language of Labor Code § 2699(a), the relevant legislative history, and decisions from the California Supreme Court. (*Id.* at 7-9). Defendant contends that *Leeper*, *Balderas*, and *Rodriguez* support its position that "a PAGA action must contain an individual and representative component." (*Id.* at 10-11). Finally, Defendant argues allowing Plaintiff "to add a claim for willful misclassification would be futile and an inappropriate use of judicial resources" because Plaintiff "failed to provide notice of the claim to the LWDA or [Defendant] before filing her SAC." (*Id.* at 11).

In reply in support of her motion to amend, Plaintiff contends that because Defendant opposes amendment "solely on futility grounds," the Court should grant leave under the

5

extremely liberal Rule 15 standard. (Doc. No. 17 at 6). Plaintiff argues the Court should not compel her to arbitrate claims she now seeks to withdraw. (*Id.* at 6-7). Plaintiff reasserts her argument that she is entitled to bring a non-individual PAGA claim and argues that "[b]y asking the Court to find that representative-only PAGA claims 'do not exist,'" Defendant is asking the Court to improperly overrule the California Court of Appeal's *Balderas* decision. (*Id.* at 8). Finally, Plaintiff asserts Defendant's argument that including a willful misclassification claim is futile (1) improperly considers matters outside the pleadings and (2) is incorrect because her "pre-suit PAGA notice was predicated on [Defendant] misclassifying her and the Aggrieved Employees as independent contractors, which is what served as the basis for [Defendant's] illegal straight time for overtime pay scheme and its litany of Labor Code violations." (*Id.* at 13-14).

### C. Hearing Arguments

While reviewing the Parties' opposing positions on whether Plaintiff can bring only a non-individual PAGA claim, the undersigned independently learned that the California Supreme Court ordered review in *Leeper*. *See Leeper v. Shipt*, 331 Cal. Rptr. 3d 450 (2025). The specific issues the state court ordered briefed include: "1.) Does every [PAGA] action necessarily include both individual and non-individual PAGA claims, regardless of whether the complaint specifically alleges individual claims? 2.) Can a plaintiff choose to bring only a non-individual PAGA claim?" *Id.* Because the issues to be addressed in *Leeper* would likely resolve the dispute between the Parties here, the undersigned held a hearing on June 5, 2025, to ascertain whether the Parties would be amenable to staying the current action pending a decision from the California Supreme Court.

At the outset of the hearing, based on Plaintiff's briefing position that amendment would moot the motion to compel, the Court asked Plaintiff's counsel whether that was a concession that Plaintiff would indeed be required to arbitrate her individual claims. Counsel indicated there would be other grounds on which to oppose the motion, including that the agreement was not between Plaintiff and Defendant, but "for purposes of moving the case forward," the issue was moot because she was no longer seeking to pursue the claims that would be subject to arbitration. The Court then outlined two potential paths forward: 1) Plaintiff could elect to withdraw

6

the SAC and file a substantive opposition to the motion to compel; or 2) Plaintiff could proceed on the SAC and the Court would hold the matter in abeyance pending the *Leeper* ruling. Plaintiff proposed allowing the amendment to go forward and remanding the case to the state court so the state court could decide how to proceed. Defendant maintained it would be proper for the court to rule on the motion to compel—which Defendant considers unopposed based on Plaintiff's failure to respond to the substance of the motion—because a ruling would preclude the parties from having to relitigate the issues at some later point if Plaintiff decided to resurrect her individual claims. Defendant agreed that if the case were purely a PAGA case, the Court could decline to exercise supplemental jurisdiction. In response, Plaintiff reiterated her position that she could not be compelled to arbitrate claims she was no longer pursuing and whether she decided to pursue her claims in a later, separate action was a "different issue."

Defendant asserted that Plaintiff's statement that she may elect to resurrect her claims later was indicative of forum shopping. In response, Plaintiff asserted that it was her "prerogative to avoid arbitration if that is what she is trying to do." Plaintiff further indicated she had every right "to go back to state court and challenge the terms of the arbitration agreement" at a later date since she is no longer pursuing her individual claims in this Court. Defendant highlighted that even if the Court granted the motion to compel, Plaintiff could elect not to arbitrate but the order would clarify that *if* Plaintiff elected to pursue her individual claims, she must do so in arbitration.

## II.     MOTION TO COMPEL

### A. Legal Standards

The Federal Arbitration Act ("FAA") "governs arbitration agreements in contracts evidencing a transaction involving commerce." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193 (9th Cir. 2024) (citation modified); 9 U.S.C. §§ 2, 4. Specifically, "[s]ection 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649-50 (2022). Thus, courts are required "to compel the arbitration of claims covered by an enforceable arbitration agreement." *Godun v. JustAnswer*

*LLC*, 135 F.4th 699, 708 (2025).

"Generally, in deciding whether to compel arbitration, a court must determine two gateway issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Godun*, 135 F.4th at 708. "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Id.* Once the court finds the arbitration agreement enforceable, Section 3 of the FAA expressly provides that the Court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

### B. The Arbitration Agreement

Defendant FCHMC operates a private, not-for-profit healthcare network in Fresno, California. (Doc. No. 7-4, at ¶ 5). FCHMC provides both in-patient and out-patient care services to individuals across Central California. (*Id.*). It obtains supplies, equipment, and medication from both inside and outside the State of California. (*Id.*). It also receives Medicare funding. (*Id.*). Sometime in February 2023, FCHMC partnered with CareRev for the supply of nurses and other healthcare professionals. (*Id.* at ¶ 2). CareRev is an "on-demand marketplace platform that helps nurses and certain other healthcare professionals connect and engage with healthcare facilities for shifts on an as-needed basis." (Doc. 7-5 at ¶ 3).

Plaintiff Deneus-Coley is a Registered Nurse who used the CareRev Marketplace ("Marketplace") to access and claim shifts on an on-demand basis as a Healthcare Professional Independent Contractor ("Pro") at FCHMC between June 2023 and March 2024. (Doc. No. 7-5 at ¶ 16). To be able to use the Marketplace and claim shifts, a Pro such as Plaintiff had to first create an account by providing personal information including first and last name, email address, mobile phone number, medical profession, the states where they were licensed and interested in working, and a confidential password. (*Id.* at ¶¶ 5-6). A Pro had to agree to the Independent Contractor Terms ("Contractor Terms") in effect at the time of registration "by checking an

electronic box that states, 'I accept' and clicking an electronic button that says 'I accept'" before they were able to claim any shifts through the Marketplace. (*Id.* at ¶ 7).

CareRev revised the Contractor Terms as of June 17, 2024, and published them on July 2, 2024. (*Id.* at ¶ 11). When a Pro accessed the Marketplace for the first time after the July 2, 2024 publication, "a full screen would appear titled '1099 Terms' that states 'Before we begin, please review and accept our 1099 Terms to continue.'" (*Id.* at ¶ 13; *see* Doc. No. 7-6 at 11). The Pro could choose to have a copy of the Contractor Terms emailed to them and could view and scroll through the Contractor Terms on the screen. (Doc. No. 7-5 at ¶ 13). Additionally, the following language appeared on screen:

> **PLEASE READ THESE HEALTHCARE PROFESSIONAL TERMS CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. THESE TERMS CONTAIN A MANDATORY INDIVIDUAL ARBITRATION AGREEMENT IN SECTION 19 AND CLASS ACTION/JURY TRIAL WAIVER PROVISION IN SECTION 19 (COLLECTIVELY, THE "ARBITRATION AGREEMENT") THAT REQUIRE THE EXCLUSIVE USE OF FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS, COLLECTIVE, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTIONS OR PROCEEDINGS.**

(*Id.* at ¶¶ 12-13 (capitalization and bold in original); *see* Doc. No. 7-6 at 11). The Pro could not proceed without checking two separate boxes indicating (1) they had read and agreed to the Contractor Terms and (2) they had read the arbitration clause within the Contractor Terms and "knowingly waive [their] right to have any claims arising out of the relationship heard by a court or jury." (Doc. No. 7-5 at ¶ 13; *see* Doc. No. 7-6 at 11). A Pro could not click on "I accept" until after they had checked both preceding boxes. (Doc. No. 7-5 at ¶ 13). On July 8, 2024, Plaintiff Deneus-Cooley accepted the June 17, 2024 Contractor Terms in a manner consistent with this procedure. (Doc. No. 7-5 at ¶ 17; *see* Doc. No. 7-6 at 13-15).

Of relevance, the Mutual Agreement to Arbitrate/Class Action Waiver ("Arbitration Agreement") within the Contractor Terms provides:

> [Y]ou and CareRev (each a "party" and collectively the "parties") agree to arbitrate any and all disputes, controversies, or claims between you and CareRev, you and any Healthcare Facility, or you

9

and CareRev jointly with any Healthcare Facility that arise out of or relate to, directly or indirectly: … (d) your Healthcare Services [defined as professional healthcare and other services]; (e) the terms and conditions of your engagement at any Healthcare Facility[.] For avoidance of doubt, "Claims" includes claims by or against CareRev, claims by or against any Healthcare Facility[.] …[T]he Claims include …wage and hour claims[.] …

The parties agree that Claims will be resolved on an individual basis only, and not on a class, collective, or representative basis on behalf of other individuals or Healthcare Professionals, including under California's [PAGA], to the fullest extent permitted by applicable law [ ]. In no case may … representative claims proceed in arbitration on behalf of other individuals or Healthcare Professionals.

…

This Arbitration Agreement is enforceable under and governed by the [FAA]. In the event that any portion of this Arbitration Agreement is held to be invalid or unenforceable, that limited portion will be severed, and the remainder of this Arbitration Agreement will be given full force and effect.

(Doc. No. 7-6 at 2, 7-8).

**C. Analysis**

The Court has subject-matter jurisdiction under the Class Action Fairness Act, and removal was proper. 28 U.S.C. §§ 1332(d), 1441. In addressing the motion to compel, the Court must consider whether a valid agreement to arbitrate exists between the parties and whether the agreement covers the dispute. *Brennan*, 796 F.3d at 1130.

*1. The parties have a valid agreement to arbitrate.*

In determining whether there is a valid agreement to arbitrate, the Court looks to California contract law. *See Godun*, 135 F.4th at 708. "To form a contract under California law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). "Parties may manifest assent through their conduct, however, the conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citation modified).

Here, Defendant has put forth evidence concerning Plaintiff's employment and acceptance

10

of the relevant Arbitration Agreement. Plaintiff only performed services for Defendant through shifts scheduled using CareRev's platform. (Doc. No. 7-4 at 2). Before using CareRev's platform, Plaintiff had to create an account and accept the current version of the Contractor Terms, which she did initially on January 3, 2021. (Doc. No. 7-5 at ¶ 17-18; *see* Doc. No. 7-6 at 13). Plaintiff accepted multiple iterations of the Contractor Terms over the next four years. (Doc. No. 7-5 at ¶¶ 17-18; *see* Doc. No. 7-6 at 13). Importantly, Plaintiff accepted the June 17, 2024 Contractor Terms on July 8, 2024, following a procedure where the Contractor Terms were displayed on screen and Plaintiff was required to click on boxes indicating she had read and agreed to the Contractor Terms and acknowledging and agreeing to be bound by the Arbitration Agreement before clicking "I accept." (Doc. 7-5 at ¶¶ 13, 17; Doc. No. 7-6 at 11). Internet contracts using this form of "clickwrap agreement," which "requires users to click on an 'I agree' box after being presented with a list of terms and conditions of use," have routinely been found enforceable. *Keebaugh*, 100 F.4th at 1014; *see Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed.").

Based on the evidence presented by Defendant, Plaintiff was presented with the Contractor Terms and engaged in conduct—specifically clicking the separate boxes and "I accept"—that manifested her acceptance of those terms. In the absence of any argument to the contrary or additional evidence from the Plaintiff, the Court concludes a valid agreement to arbitrate exists.

*2. Plaintiff's claims fall within the scope of the Arbitration Agreement.*

Having concluded a valid agreement to arbitrate exists, the next question for the Court is whether that agreement covers the claims asserted in Plaintiff's FAC. *Brennan*, 796 F.3d at 1130. The Court concludes it does.

First, the Arbitration Agreement applies to disputes between these parties. The Arbitration Agreement applies to "any and all disputes, controversies, or claims between you and CareRev, you and any Healthcare Facility, or you and CareRev jointly with any Healthcare

11

1  Facility" arising from or related to services provided at a Healthcare Facility. (Doc. No. 7-5 at 4-
2  5; *see* Doc. No. 7-6 at 7-8). The Contractor Terms define Healthcare Facility as "any independent
3  healthcare system or facility … registered with or otherwise utilizing the Marketplace." (Doc.
4  No. 7-6 at 2). Because Defendant uses CareRev for the supply of professionals such as Plaintiff
5  (Doc. No. 7-4 at ¶ 2), it qualifies as a Healthcare Facility. Additionally, because Plaintiff only
6  performed work for Defendant through CareRev (*see* Doc. No. 7-5 at ¶ 16), the Arbitration
7  Agreement applies to any disputes between Plaintiff and Defendant arising from that work.

8  In opposition, Plaintiff contends that Defendant was not a party to the Agreement. (Doc.
9  No. 10 at 7). The Court finds this argument unavailing. Under California law, an arbitration
10 agreement "may be enforced by or against nonsignatories … where a nonsignatory is a third party
11 beneficiary of the agreement." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013)
12 (quoting *Nguyen v. Tran*, 157 Cal. App. 4th 1032 (2007)). "[T]he parties to the contract must
13 have expressly intended that the third party would benefit." *Id.* at 1234 (citing *Matthau v. Super.*
14 *Ct.*, 151 Cal. App. 4th 593 (2007)). Here, the Arbitration Agreement explicitly indicates that
15 "any Healthcare Facility that you perform work at or for is intended to be a third-party
16 beneficiary of this Arbitration Agreement." (Doc. No. 7-5 at 5; *see* Doc. No. 7-6 at 7-8). (Doc.
17 No. 7-5 at 5; *see* Doc. No. 7-6 at 7-8). As such, Defendant is entitled to enforce the Agreement.

18 Additionally, the Arbitration Agreement applies to the subject matter of the dispute. The
19 Arbitration Agreement specifies that "Claims include, but are not limited to … wage and hour
20 claims." (Doc. No. 7-5 at 5; *see* Doc. No. 7-6 at 7-8). The FAC raises claims based on
21 Defendant's alleged failure to pay overtime wages, provide required rest periods, and provide
22 accurate wage statements. (*See* Doc. No. 1-2 at 81-85, 95-111). As these claims deal relate to
23 Plaintiff's wages and hours while working for Defendant through CareRev, Plaintiff's claims fall
24 within the Arbitration Agreement.

25                  3. *Plaintiff's individual PAGA claims are subject to arbitration..*

26 Plaintiff's assertion of PAGA claims warrants separate discussion because of the
27 representative nature of these claims. "California precedent holds that a PAGA suit is a
28 representative action in which the employee plaintiff sues as an agent or proxy of the State."

*Viking River*, 596 U.S. at 645. In *Viking River*, the United States Supreme Court recognized two rules set out by the California Supreme Court in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348 (2014): (1) the "principal rule" prohibiting waiver of representative standing to bring PAGA claims; and (2) a secondary rule invalidating "agreements to separately arbitrate or litigate individual PAGA claims for Labor Code violations that an employee suffered on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." *Id.* at 649. The Court ultimately concluded "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate" but left undisturbed the holding that wholesale waiver of PAGA claims were invalid. *Id.* at 662.

Here, the Arbitration Agreement specifies that "Claims will be resolved on an individual basis only, and not on a class, collective, or representative basis on behalf of other individuals or Healthcare Professionals, including under California's Private Attorneys General Act." (Doc. No. 7-6 at 8). To the extent this provision is intended as a wholesale waiver of representative standing to bring PAGA claims, it is invalid under *Iskanian*. *Viking River*, 596 U.S. at 662; *Diaz v. Macys West Stores, Inc.*, 101 F.4th 697, 705 (9th Cir. 2024) ("The California Supreme Court has held that the ability to bring non-individual PAGA actions cannot be waived by agreement, because such a waiver would frustrate the enforcement objectives of PAGA."). Thus, the Arbitration Agreement does not prohibit Plaintiff from bringing her PAGA claims.

It does, however, require that Plaintiff's individual PAGA claim be decided in arbitration. The Arbitration Agreement contains a severability clause, which provides that if "any portion of this Arbitration Agreement is held to be invalid or unenforceable, that limited portion will be severed, and the remainder of this Arbitration Agreement will be given full force and effect." (Doc. No. 7-6 at 8). As in *Viking River*, this severability clause entitles Defendant to compel Plaintiff to arbitrate her individual PAGA claims. 596 U.S. at 662.

In her effort to avoid arbitration, Plaintiff argues the Arbitration Agreement only applies

to "Type A"[2] PAGA claims and in Plaintiff's purposed SAC, she is bringing only "Type O"[3] PAGA claims. (Doc. No. 10 at 9). Plaintiff concedes that "Type A" PAGA claims are subject to arbitration, whereas "Type O" claims are precluded from arbitration. (*Id*.). Critical to prevailing on this theory is that the Court grant Plaintiff's Motion to permit the SAC to be the operative pleading. As explained more fully below, the Court finds leave to amend is not warranted in this case.

Accordingly, the operative complaint is Plaintiff's FAC and Plaintiff's individual claims—including her individual PAGA claim—are subject to arbitration. While Plaintiff argues she cannot be compelled to arbitrate claims she is no longer seeking to pursue, the fact remains that at this time, the FAC is the operative complaint before this Court, and it contains claims that are subject to the Arbitration Agreement.[4] To the extent she wishes to pursue those claims in her individual capacity, she is required to arbitrate those claims, and the Court will stay this action pending arbitration. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay ending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

### III.  MOTION TO AMEND

#### A. Legal Standards

Under Rule 15 of the Federal Rules of Civil Procedure, a party "may amend its filing once as a matter of course" within a certain period. Fed. R. Civ. P. 15(a)(1). For subsequent amendments, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny amendment only if it would cause prejudice to the opposing party,

---

[2] Plaintiff utilizes the nomenclature adopted by California's Fifth Circuit in designating PAGA claims that have individual versus representative components. (Doc. No. 10 at 8, citing *Galarsa v. Dolgen Cal., LLC*, 88 Cal. App. 5th 639, 648 (2023)). "Type A" PAGA claims seek to recover the civil penalty owed to the State because of a Labor Code violation suffered by the individual plaintiff as the employee aggrieved by the violation. *Id*.
[3] "Type O" claims seek to recover civil penalties suffered by employees other than the individual plaintiff, i.e. representative claims. *Galarsa,* 88 Cal. App. 5th at 649.
[4] To the extent Plaintiff does wish to engage in arbitration, she may dismiss her individual claims with prejudice.

14

is sought in bad faith, is futile, or creates undue delay. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-87 (9th Cir. 1987).

**B. Analysis**

Because of the procedural posture of this case, Plaintiff cannot dismiss or amend her pending claims without Defendant's consent or approval of the Court. *See* Fed. R. Civ. P. 41(a) (allowing voluntary dismissal after the filing of an answer only upon "stipulation of dismissal by all parties who have appeared" or by court order); *see* Fed. R. Civ. P. 15(a) (setting the time during which a plaintiff may amend as a matter of course and requiring consent of the opposing party or leave of court in all other circumstances).

After considering the relevant factors, the Court concludes leave to amend is not warranted on the facts presented. Critical to the Court's decision are Plaintiff's actions, including moving to amend only after being faced with Defendant's motion to compel arbitration, opposing Defendant's motion based only on the proposed amendment without addressing Defendant's specific arguments or the substance of the Agreement, and indicating at the hearing that refiling her claims later in state court would be within her rights. These actions lead the Court to conclude Plaintiff's motion to amend is a "bad-faith attempt to engage in forum shopping." *Rockin Artwork, LLC v. Bravao Int'l Grp. Merchandizing Servs., Inc.*, 727 F. App'x 392, 393 (9th Cir. 2018) (affirming district court's denial of leave to amend). The Court declines to set a precedent that would encourage parties to engage in similar behavior.

Further, based on Plaintiff's refusal to confirm that her claims are subject to arbitration, failure to present substantive argument in support of her position, and indication that she may attempt to bring her claims again in state court, the Court also concludes Defendant would be prejudiced if the amendment were allowed. While it is still early in these federal proceedings, Defendant expended resources seeking an order on the arbitration issue and the matter is ripe for review by this Court, and Defendant would be prejudiced if Plaintiff were able to avoid an adverse ruling, refile her claims in state court, and relitigate the arbitration issue in a potentially more favorable forum. *See Clifford v. Trump*, No. CV 18-02217-SJO (FFMx), 2019 WL

15

6879751, at *3-5 (C.D. Cal. Feb. 4, 2019) (addressing defendants' argument that they would be prejudiced if plaintiff were allowed to amend complaint to voluntarily dismiss her defamation claim after defendants moved to strike the claim by dismissing the relevant claim *with prejudice*).

Finally, the Court concludes amendment would be futile because Plaintiff cannot bring *only* a non-individual PAGA claim. While the California Supreme Court will likely address this specific issue in *Leeper*, as of the date of this Order, the California Supreme Court has not considered the issue so that this federal court "must determine what result the [California] Supreme Court would reach based on state appellate court opinions, statutes and treatises." *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 64 F.4th 1143, 1146 (9th Cir. 2023) (citation modified).

"In construing a statute, [a court's] task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Courts] look first to the words of the statute, which are the most reliable indications of the Legislature's intent." *Adolph v. Uber Technologies, Inc.*, 14 Cal. 5th 1104, 1120 (2023). Labor Code § 2699(a) provides that a civil PAGA action may be brought "by an aggrieved employee on behalf of the employee *and* other current or former employees." Cal. Lab. Code § 2699(a) (emphasis added). This statutory test's use of "and" rather than "or" specifies Plaintiff cannot bring a non-individual PAGA claim without also bringing claims on behalf of herself. As the appellate court concluded in *Leeper*, a different interpretation "would be contrary to fundamental tenants of statutory construction that [courts] assign the statute's words their usual and ordinary meanings, and construe them in context, and … not render statutory language meaningless." *Leeper*, 107 Cal. App. 5th at 1009-10.

Consideration of *Balderas* and *Rodriguez* does not persuade the Court to reach a different conclusion. In *Balderas*, the appellate court concluded that a plaintiff was not required to bring an individual claim to have *standing* to pursue a PAGA claim. *Balderas*, 101 Cal. App. 5th at 539. However, a finding that a plaintiff has standing to pursue a claim is not equivalent to finding that a plaintiff has stated a claim and even the *Balderas* court noted that "an employee who does not bring an individual claim against her employer may nevertheless bring a PAGA action for herself *and* other employees of the company." *Id.* at 536 (emphasis added). Turning to

1     *Rodriguez*, that court found *Leeper* unpersuasive and concluded a plaintiff cannot be compelled to arbitrate an individual PAGA claim when the complaint does not contain such a claim. *Rodriguez*, 109 Cal. App. 5th at 80-81. However, the *Rodriguez* court noted that the only issue before it was whether the complaint *did* contain an individual PAGA claim, "not whether it *should* include such a claim." *Id.* at 81. In fact, the court noted that "plaintiff's failure to assert an individual PAGA claim may mean the complaint fails to comply with section 2699, subdivision (a)." *Id.* Thus, neither *Balderas* nor *Rodriguez* establish that Plaintiff can bring only a non-individual PAGA claim. Because Plaintiff cannot bring only a non-individual PAGA claim, amendment would be futile.

       To summarize, while generally leave to amend should be freely given, the Court concludes leave is not warranted here because Plaintiff appears to be engaged in bad-faith forum shopping, Defendant would be prejudiced if it were forced to relitigate the arbitration issue Plaintiff is seeking to avoid, and amendment would be futile because Plaintiff cannot pursue only a non-individual PAGA claim.

       Accordingly, it is hereby **ORDERED:**

1. Defendant's motion to compel arbitration (Doc. No. 7) is GRANTED;
2. Plaintiff's motion for leave to amend (Doc. No. 9) is DENIED.
3. To the extent Plaintiff wishes to pursue her individual claims, she SHALL submit her individual claims to arbitration in accordance with the Agreement.
4. This action, including Plaintiff's representative PAGA claims, is STAYED pending the outcome of such arbitration.
5. Within fourteen (14) days of the issuance of the arbitrator's decision, the Parties shall file a joint status report.

Dated:    July 8, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17